DiSABATINO & SONS, INC. (Security Insurance Group) Employer-Appellant,

v.

Albert FACCIOLO, Claimant-Appellee.

DiSABATINO & SONS, INC. (Royal Globe Insurance Company) Cross-Appellant,

v.

Albert FACCIOLO and Security Insurance Group, Cross-Appellees.

Supreme Court of Delaware.

June 1, 1973.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, for DiSabatino & Sons, Inc. and Royal Globe Ins. Co.

Howard M. Berg and William J. Taylor, III, of Berg, Taylor & Komissaroff, Wilmington, for Security Ins. Group.

Joseph S. Yucht, of Balick & Yucht, Wilmington, for Albert Facciolo.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

In this workmen's compensation case, the question is which of two insurance carriers is responsible for payments of benefits for injuries sustained by Albert Facciolo, the nominal appellee, while employed by DiSabatino & Sons, Inc., the nominal appellant. The Industrial Accident Board imposed the liability upon Security Insurance Group (herein "security"), but ordered Royal Globe Ins. Co. (herein "Royal") to pay one-half of the medical witness fee and the attorney's fee. Both insurers have appealed.

Facciolo was first injured on December 2, 1968, at which time Security was the insurer. While lifting a concrete block, he struck his back on some metal steps. Dr. LeRoy, a neurosurgeon, on April 8, 1969, performed a laminectomy on the right side of his L4, L5 disc because of a herniation. The claimant was permitted to do light work beginning on May 10, 1969. Later he returned to laying blocks. About the middle of November, 1969, he began to feel minor pains in his right leg, but continued to work. On December 9, 1969, he was working in a manhole fifteen feet deep. Someone yelled "Dirt!" (a signal for a cave-in), and Facciolo immediately turned and ran up a dirt ramp to avoid the cave-in. He did not feel any pain at this time, and continued to work until December 16, 1969, by which time he was having pain to the extent that he went to see a doctor. On December 29, he again saw Dr. LeRoy because of pain in his back and leg. At that time, he said nothing to the doctor about the episode of December 9, but did tell him about it at some later date.

In the following February, Dr. LeRoy performed a second laminectomy on the right side of L4, L5. He found at that site an unusual amount of scar tissue, which he removed. The pain continued, however, and on March 26, a third laminectomy was performed on the L5, S1 disc; the doctor could not say how long the involvement of that disc had existed, but stated that the condition then found could have been the result of the accident of 1968, plus the effect of the surgery, or that it may have been the result of a later strain, possibly the episode of December 9, 1969. At the time of the hearing, the doctor believed that Facciolo had a 25–30 per cent disability to his back and right leg. This percentage is the same as that which followed the injury of December 2, 1968. Furthermore, the doctor said that the scar tissue itself could cause the pain. The work restrictions prescribed by the doctor thereafter were the same as those imposed following the earlier injury.

The Board made the following findings:

"The Board believes that the claimant on December 9, 1969 suffered a reoccurrence of an earlier disability first sustained on December 2, 1968 and that therefore, Security Insurance Company, the employer's carrier on December 2, 1968 must bear the full burden for all compensation due to the claimant. The Board's reasoning is as follows: The unusual exertion rule adopted by the Delaware Courts is used to determine if an accident has taken place within the meaning of the Delaware Workmen's Compensation Act, but we do not believe it is to be used to determine which insurance company is liable for compensation payments after a finding that an accident has taken place. But for the unusual exertion rule the claimant because of his pre-existing condition would not have suffered a compensable accident on December 9, 1969. We used this rule to determine eligibility for compensation not to determine who will pay it. It also must be remembered that the only medical expert, Dr. LeRoy, stated that the claimant already had the same permanent partial disability and work restrictions resulting from the first accident, well before the second accident. The subsequent events suffered by the claimant did not change the doctor's opinion on permanent partial disability or on the claimant's work restrictions. The doctor also stated that scar tissue from the first operation could have caused the claimant to give up working on December 19, 1969. The claimant suffered no external trauma in escaping the cave-in and no immediate pain thereafter. (He was not hit by any falling debris nor had he slipped, fallen or struck any object in attempting to escape the cave-in.) The Board believes that the scar tissue formations in the claimant's back were the result of the first operation. In addition the doctor stated that the claimant did not give any history to him on the first visit December 29, 1969 which related to

the cave-in; this is consistent with Royal Globe's Exhibit #1 where the claimant stated that he could not understand the increase in leg pain on or about December 16, 1969 and then finally he recalled having jumped from a manhole cave-in December 9, 1969. Even the claimant minimized his escape activities as the cause of his pain." *

I

The term "recurrence" is used in common parlance to describe the return of a physical impairment, regardless of whether its return is or is not the result of a new accident. As applied in most workmen's compensation cases, however, it is limited to the return of an impairment without the intervention of a new or independent accident. Here, we use it in that sense. We believe this definition is consistent with the use of the word "recurred" in 19 Del.C. § 2347, which reads in part as follows:

"§ 2347. Review by Board of agreements or awards; grounds; modification of award

"On the application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred, or that the status of the dependent has changed, the Board may at any time, but not oftener than once in 6 months, review any agreement or award."

■ If an injured workman suffers a recurrence, he may apply for further compensation under the quoted section and if there has in the meantime been a change of insurers, the liability therefor falls upon that insurer which was liable for the original benefits. On the other hand, if his condition is not a true recurrence, but is brought about or aggravated by a new work-connected accident, the liability falls upon that insurer whose policy is in effect at the date of the new accident. This rule appears to have been followed in the majority of states which have not specifically provided otherwise by statute. Pace v. Industrial Commission, 71 Ariz. 216, 225 P.2d 705 (1950); Peters' Case, 331 Mass. 188, 118 N.E.2d 75 (1954); Crawford v. Tampa Inter-Ocean S. S. Co., 150 S. 875 (La.Ct. App.1933); Jenkins v. Tube Turns, Inc., 321 S.W.2d 48 (Ky.Ct.App.1959); Regis v. Lansing Drop Forge Company, 25 Mich. App. 637, 181 N.W.2d 656 (1970). Although this rule may appear somewhat arbitrary and may not be the best of all possible methods of handling such a situation, any other rule must be laid down by the Legislature rather than the Courts. See Alloy Surfaces Co. v. Cicamore, Del.Supr., 221 A.2d 480, 485 (1966).

■ We are of the opinion that the Board was mistaken as a matter of law in its holding that the "unusual exertion rule" is not used to determine which insurance company is liable in a case like the present one. An old injury, found to be caused or exacerbated by unusual exertion during the course of employment, is compensable; determination of the insurer liable therefor automatically follows the finding. 3 Larson on Workmen's Compensation § 95.12 and cases therein cited. If the later condition is a true recurrence, as defined herein, the original insurer is liable; if it is caused by a new work-connected accident or episode, whether or not due to unusual exertion, the liability is upon the insurer at that time.

II

■ From the foregoing discussion, it becomes obvious that liability as between Security and Royal in this case depends upon whether claimant's second disability was or was not a true recurrence. As to this, the Board's findings are self-incon-

* The fact, not mentioned by the Board, that the claimant had pains in his leg in November, 1969, is pointed out by Royal as adding weight to the belief that his latest trouble was a true recurrence, in the sense we herein use that term.

sistent. Its holding that that the claimant was entitled to additional compensation only because of his unusual exertion on December 9, 1969, necessarily implies an aggravation of his former condition by reason thereof. The result would then be a shifting of liability to Royal. But the Board also found, in effect, that the episode of December 9, 1969, was not the cause of the deterioration of his physical condition as observed by Dr. LeRoy a month or so later. This finding would necessarily imply a true recurrence for which Security would be liable. Since there is some evidence to support either conclusion, resolution of this discrepancy is a factual matter which must be resolved before a final determination can be made as between the two insurers. It is a matter which can be resolved only by the Board itself. For this reason, the existing Order must be set aside and the case remanded to the Board for further proceedings in accordance herewith.

### III

The Board also ruled that, despite its finding in favor of Royal as to the principal contention, Royal nevertheless should be required to pay one-half of Facciolo's medical witness fee and attorney's fee. Apparently, the reason for this rather unusual Order was that Royal had disputed the happening of any accident at all within the Workmen's Compensation Act on December 9, 1969. We find no justification for this part of the Order. These costs should be taxed against the carrier which is liable for the other benefits, regardless of which insurer is ultimately held responsible. If it be finally determined that Facciolo's trouble was a true recurrence, Royal was certainly justified in contending that there was no accident causing compensable injuries on December 9, 1969; otherwise, it will be liable for all these expenses, in any event.

The decision below must be reversed and the cause remanded for further proceedings.