**MR. PIZZA, INC., By Its Carrier, Merchants Insurance Group, Employer-Appellant,**

**v.**

**Michael S. SCHWARTZ, and Mr. Pizza, Inc., By Its Carrier, the Home Insurance Company, Claimant-Appellee.**

Superior Court of the State of Delaware, New Castle County.

Submitted: Nov. 9, 1983.

Decided: April 4, 1984.

Carl Schnee, and Susan C. Del Pesco, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Mr. Pizza, Inc., by its carrier, Merchants Insurance Group.

David Roeberg, of Roeberg & Associates, P.A., Wilmington, for Michael S. Schwartz.

Stephen P. Casarino, Esq. of Tybout, Redfearn, Casarino & Pell, Wilmington, for Mr. Pizza, Inc., by its carrier, The Home Insurance Company.

MARTIN, Justice.

Michael S. Schwartz ("claimant") has moved for reargument with respect to the Court's earlier opinion, *Mr. Pizza, Inc., by its carrier, Merchants Insurance Group v. Michael S. Schwartz and Mr. Pizza, Inc., by its carrier, the Home Insurance Company,* Del.Super., C.A. No. 82A–JN–4, Martin, J. (July 8, 1983) which reversed the decision of the Industrial Accident Board ("Board"). The respective positions of claimant, Merchants Insurance Group ("Merchants") and Home Insurance Company ("Home") on the Motion for Reargument have persuaded the Court that its earlier decision on the appeal warrants reconsideration. This is the Court's decision superceding its July 8, 1983 opinion in the above referenced matter.

Claimant sustained three occupational injuries to his back in December, 1977, June, 1978, and June, 1980, while in the employ of Mr. Pizza, Inc. ("Mr. Pizza"). This Court's review concerns which of two successive insurance carriers is responsible for payment of benefits compensating the 1980 disability, if, in fact, said injury is compensable. Mr. Pizza did not take part in the Motion for reargument.

The facts germane to the Court's inquiry are these: Claimant first hurt his back on December 24, 1977 and was examined and x-rayed at the Newark Emergency Room. Although the x-rays revealed mild disc degeneration at the L4–L5 level of claimant's spine, the injury did not warrant hospitalization nor did it prompt him to pursue a workmen's compensation claim.

A subsequent industrial accident in 1978 required claimant's hospitalization and culminated in surgery for a herniated disc at the L5–S1 spinal level, performed by Dr. William Kraut. Claimant was discharged from Dr. Kraut's care shortly after surgery and returned to work at Mr. Pizza full time until the incident in June, 1980. As a result of the 1978 injury, claimant incurred 20% permanent impairment to his back and was instructed to confine any lifting activity to a maximum of 40 lbs. Compensation for the disability was paid to claimant by Merchants, which was the carrier for Mr. Pizza at that time.

Claimant injured his back a third time in 1980 when his left foot slipped while he was lifting a 5 gallon milk container. As claimant attempted to steady himself and the liquid within the container, a resultant shift in weight caused a disc to rupture at the L4–L5 level which necessitated surgery

and occasioned an additional 10% impairment to his back. This disc herniation was treated by Dr. Magdi I. Boulos. The carrier for Mr. Pizza at the time of this accident was Home.

The Board imposed liability for the 1980 episode on Merchants, ruling that the injury was a recurrence of a pre-existing condition rather than a new accident. Subsumed within this holding was the Board's finding that the purported recurrence was not precipitated by "unusual exertion". Merchants contends, on appeal, that the evidence does not support a finding of recurrence, but rather a new injury occasioned by unusual exertion, thereby shifting liability to Home, the carrier at risk when the 1980 incident occurred.

▇ Initially, this Court agrees with claimant that his 1980 injury was not a recurrence as that term is defined in *DiSabatino & Sons, Inc. v. Facciolo*, Del.Supr., 306 A.2d 716 (1973). The *DiSabatino* Court explained:

> The term "recurrence" is used in common parlance to describe the return of a physical impairment, regardless of whether its return is or is not the result of a new accident. As applied in most workmen's compensation cases, however, it is limited to the return of an impairment *without the intervention of a new or independent accident.* 306 A.2d at 719 [Emphasis added].

Notwithstanding its finding of a recurrence, the Board in its decision included Mr. Schwartz's description of the incident in question:

> As he picked it [a 5 gallon container of milk] up, his left back foot slipped, the left hand came loose from the handle and it shifted the entire weight of the object to the right side of his body. It pulled him down and twisted him and he felt a pop in his back.

Mr. Schwartz's testimony as to how the accident occurred was not disputed. The Supreme Court has indicated that there are occasions when the Court can readily infer subordinate findings from the ultimate findings and the record. *Board of Public Education in Wilmington v. Rimlinger,* Del.Supr., 232 A.2d 98 (1967). This is one of those occasions. Thus, impliedly the Board accepted Mr. Schwartz's testimony of the circumstances of the accident. Indeed, there was no testimony to the contrary. In light of Mr. Schwartz' testimony, which was accepted by the Board, this Court finds the Board's conclusion that the resulting disability was not triggered by a new episode to be inconsistent with the Board's own assessment of the evidence and, therefore, not supported thereby.

Moreover, the testimony of Dr. Boulos, the expert selected by the Board as the most credible, further contradicts the Board's findings. Specifically, Dr. Boulos stated that the defect warranting claimant's most recent surgery was a different defect than that for which the 1979 surgery was performed. He testified that claimant was more prone to injury due to a preexisting weakness but that the injury could, nonetheless, have occurred absent prior surgery or a previous history of residual disability. Dr. Boulos further described the milk-jar incident as a "new injury" which occurred in its entirety "when he [claimant] felt it pop when he lifted the container."

In summarizing this testimony, the Board in its decision tacitly recognized the import of the 1980 accident:

> Dr. Boulos stated that it was probable that the disc had been weakened by prior surgery and the rupture was waiting to happen. It is not common, but it does happen and *requires a second force of herniation.* [Emphasis added].

Thus, the acknowledged requirement of a second force to rupture the disc erodes any

suggestion that the injury in question was a recurrence. Accordingly, the Board must be reversed with respect to this finding.

■ Notwithstanding the absence of a true recurrence of his previous disability, claimant's entitlement to compensation for the impairment caused by the 1980 accident must still be evaluated in the context of his preexisting back condition.[1] Specifically, the decisional law of this State requires a showing of "unusual exertion" as a prerequisite to compensability where the injury is due, in part at least, to the aggravation of a preexisting physical weakness. *Milowicki v. Post and Paddock, Inc.*, Del.Super., 260 A.2d 430 (1969); *Boulevard Elec. Sales v. Webb*, Del.Supr., 428 A.2d 11 (1981). Contrariwise, where a claimant is not plagued by a preexisting malady, a showing of "usual exertion" is sufficient for recovery. *General Motors Corp. v. Veasey*, Del.Supr., 371 A.2d 1074 (1977).

■ Acknowledging the claimant's preexisting injury, Merchants challenges the Board's conclusion that the 1980 accident did not occur in the wake of unusual exertion. The definitive test for unusual exertion is articulated in *General Motors Corp. v. Veasey*, supra:

> We hold that in order to implement the "unusual exertion" test and carry out its intended purpose of assuring that it was the claimant's employment which was a "substantial cause" of his injury, the proper reference must be the employee's particular occupational duties. This means that, in order to meet the "unusual exertion" test, the claimant must show that this exertion was beyond that ordinarily required for the performance of his duties. 371 A.2d at 1076.

Although the Board attempted to follow the *Veasey* rule in determining that claimant had not expended unusual energy in sustaining his injury, this Court holds that the Board's decision is in error.

This Court recognizes that the relevant inquiry in a case such as this involving a preexisting condition is the unusualness of the exertion rather than the unusualness of the activity engaged in. The exertion must be greater than that ordinarily requried for the performance of the activity.

The "unusual exertion" test attempts to assure that any injury did indeed result from an accident and not from natural causes, and that it was the employment which was a substantial cause of the injury. *Faline v. Guido and Francis DeAscanis & Sons*, Del.Supr., 192 A.2d 921 (1963); *A.H. Angerstein, Inc. v. Jankowski*, Del.Super., 187 A.2d 81 (1962); *General Motors Corp. v. Veasey*, supra. If the exertion is beyond that ordinarily required for performance of a worker's duties, it is a new accident arising out of the course of employment, notwithstanding the preexisting disability.

In § 3800 of his treatise on *Workmen's Compensation*, Larson explains:

> The "by accident" requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties. Accordingly, if the strain of claimant's usual exertions causes collapse from heart weakness, back weakness, hernia, and the like, the injury is held accidental. *A very substantial minority of jurisdictions require a showing that the exertion was in some way unusual,* or make other

---

1. The Court notes the subtle distinction between a recurrence, which by definition involves *no* intervening force, and the aggravation of a preexisting injury, which does require such force.

reservations, but this line of decision causes difficulty because of the constant necessity of drawing distinctions between usual and unusual strains. [Emphasis added].

Delaware is one of the minority jurisdictions which, as Larson points out, is forced to draw distinctions between usual and unusual strains.

■ The distinction between usual and unusual exertion has consistently been one of the most confused and misunderstood facets of our workmen's compensation law. In order to help clarify the distinctions between usual and unusual strains, the Supreme Court, in a footnote to *Boulevard Elec. Sales v. Webb,* supra, elaborated on the unusual exertion issue:

> Although it is not necessary for the Court to reach the "unusual exertion" question in this case, we take the opportunity to comment on the findings on this issue in order to provide future guidance to the Board in applying the *Veasey* rule ... [T]he crux of the *Veasey* test is the *exertion* ordinarily required on a given job as compared to the exertion which leads to an injury on a particular occasion. In other words, while the activity that causes an injury on the job may be unusual in light of activities normally required of the worker, if the exertion expended in the unusual activity is no more than the exertion normally required of the worker in the course of his usual duties, the *Veasey* test is not satisfied.

In the case at bar, the activity (lifting and carrying a 5 gallon milk carton) was one of claimant's usual duties. The question, however, is whether the exertion which led to the claimant's injury on this particular occasion was more than the exertion ordinarily required to lift and carry such a milk carton, or, indeed, was more than the exertion normally required in the course of any of his usual duties. Based upon the findings of the Board below, this Court recog-

nizes that claimant's injury was due to exertion which was more than that ordinarily required to lift and carry the milk carton. The initiating event was claimant's slip. As a result of the slip, he lost his balance, lost his grip on the carton with his left hand and severely twisted and wrenched his back. Such a stressful expenditure of energy is not the usual exertion required in lifting and carrying a milk carton. In fact, such an energetic activity is beyond the exertion normally required by claimant in performing any of his usual duties. The Board found all of the above facts concerning claimant's fall. Its holding that this incident was not accompanied by unusual exertion constitutes legal error and, therefore, is reversed.

The Supreme Court, in *DiSabatino & Sons, Inc. v. Facciolo,* supra, held that if any injury results from a new work-connected accident, the liability falls upon the insurer whose policy is in effect on the date of the new accident. Since the "unusual exertion rule" must sometimes be used to determine whether a new work-connected compensable accident has occurred, the unusual exertion rule will, in effect, also serve to determine which carrier is liable where there are successive carriers. In other words, it may be necessary to use the rule to distinguish between a new accident (which may, in some cases, result in an aggravation of a preexisting condition) and a recurrence. However, once it is determined that an employee's injury was caused by a new accident, any liability is borne by the insurer at risk at the time of that accident, regardless of whether there was unusual exertion.

*DiSabatino & Sons, Inc. v. Facciolo,* supra, teaches that if the latter condition is a true recurrence, as defined herein, the original insurer is liable; if it is caused by a new work-connected accident or episode, whether or not due to unusual exertion, the liability is upon the insurer at that time. 306 A.2d 719.

In the case at bar, the unusual exertion rule indicates that a new injury has occurred. Therefore, Home, the carrier at the time of the accident which resulted in the new injury, is liabile. Thus, the Board's decision is reversed.

IT IS SO ORDERED.