MR. PIZZA, INC., by its carrier, The HOME INSURANCE COMPANY, Employee-Appellee Below, Appellant,

v.

Michael S. SCHWARTZ, Claimant-Appellee Below, Appellee,

and

Mr. Pizza, Inc., by its carrier, Merchants Insurance Group, Employer-Appellant Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 13, 1984.

Decided: Feb. 6, 1985.

**428**

Stephen P. Casarino (argued), Tybout, Redfearn, Casarino & Pell, Wilmington, for appellant.

David Roeberg (argued), Roeberg & Associates, P.A., Wilmington, for Claimant-Appellee.

Carl Schnee and Susan C. Del Pesco (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Employer-Appellee.

Before HORSEY, MOORE, and CHRISTIE, JJ.

CHRISTIE, Justice (for the majority):

Claimant-appellee sustained three injuries to his back while performing his duties as a manager of Mr. Pizza, Inc. (hereinafter, Mr. Pizza). Between the time of claimant's second and third injuries, Mr. Pizza changed insurance carriers. The narrow issue which now confronts this Court concerns which of the two insurance carriers must pay the benefits, to which plaintiff is entitled as a result of his third injury.

The pertinent facts are as follows:

After claimant sustained his first back injury on December 24, 1977, he was exam-

ined at the Newark Emergency Room. The x-rays revealed mild disc degeneration at the L–4, 5 level of claimant's spine. Claimant did not file a workmen's compensation claim and received no further treatment for this initial injury.

On June 1, 1978 claimant suffered a second injury. The neurosurgeon who treated plaintiff, performed a myelogram which showed a disc herniation at the L–5, S–1 level, and surgery was performed in December 1978. As a result of the 1978 injury plaintiff received compensation for 20% permanent impairment to his back. This compensation was paid by Merchants Insurance Group (hereinafter, Merchants), the workmen's compensation carrier for Mr. Pizza at the time of that injury.

Following three months of recuperation, claimant returned to work, full time, in April 1979. Before the doctor discharged claimant, he was instructed to exercise regularly and to avoid lifting anything which weighed more than 40 pounds. Claimant received no further treatment until after his third injury.

On June 11, 1980, claimant sustained his third back injury. By the time of the third injury, Mr. Pizza had changed it's workmen's compensation carrier to Home Insurance Company (hereinafter, Home).

The third injury occurred when claimant attempted to lift a five-gallon plastic container of milk. The container weighed less than 40 pounds (within the limitations imposed by claimant's doctor), and claimant testified that he had lifted such container on prior occasions. The Industrial Accident Board described the incident in the following manner:

As he picked it up, his left back foot slipped, the left hand came loose from the handle and it shifted the entire weight of the object to the right side of his body. It pulled him down and twisted him and he felt a pop in his back.

Following this incident, claimant experienced extensive pain and was unable to work. He was hospitalized on June 29, 1980, complaining of back pain with radiation to his left leg. Due to the temporary absence of his doctor, claimant was treated by a different neurosurgeon. A disc operation was performed by his new doctor, at the L–4, 5 level (which is directly above the L–5, S–1 site of the prior surgery). Claimant was informed by the doctor that he could return to part-time work in September of 1980. However, because Mr. Pizza wanted him on a full-time basis only, claimant was forced to seek employment elsewhere.

On September 30, 1981, claimant filed a petition with the Board to determine what additional compensation was due him. In its opinion the Board noted that all the parties had agreed that the claimant was injured in three compensable industrial accidents. Therefore, the only issues confronting the Board were: (a) whether the last injury was a new accident or merely a recurrence of claimant's old injuries, and (b) the percent of permanent impairment now suffered by claimant.

The claimant, and both the doctors who had treated him, testified at the hearing conducted by the Board.

Claimant described to the Board, the manner in which the last injury occurred. He also stated that his responsibilities as a manager at Mr. Pizza included hiring, firing, preparation, payment of bills, ordering supplies, and insuring that things generally ran smoothly. He noted that, in the performance of the aforementioned tasks, it was not unusual for him to lift milk cartons similar to the one which resulted in his last injury.

His original doctor was of the opinion that the last injury suffered by claimant constituted a new accident. He thought that the physical contortions experienced by the claimant (while lifting the milk carton) provided a sufficient cause to rupture the disc at the L–4, 5 level and that the previous rupture at the L–5, S–1 level had little bearing on the subsequent injury. He felt that the limitations he had imposed on claimant before the last accident were suf-

ficient to prevent further back problems, in light of plaintiff's degenerative disc disease.

Claimant's second doctor gave a slightly different view as to the cause of the plaintiff's last injury. This doctor was of the opinion that the prior operation had weakened claimant's back. He noted the existence of extensive scar tissue around the area of claimant's prior operation. He explained that an individual with prior back problems is more prone to rupture another disc and that the weakness at the L–5, S–1 level had placed more stress on the L–4, 5 disc level above it. However, the doctor proceeded to note that claimant's second rupture could have occurred even if no prior surgery had been performed and that the latter rupture did require a second force for the herniation. He expressed no doubt that the slipping and twisting that claimant experienced when he lifted the milk carton caused the second disc to rupture.

After hearing and considering the testimony of these witnesses, the Board determined that, in light of claimant's prior surgery and weakened back, his final injury was actually a recurrence of his prior back problems. The Board noted that the lifting of the milk carton was an act which claimant had successfully completed on prior occasions, was within the limitations imposed and consequently did not involve any unusual exertion. As a result, claimant's final injury was deemed not to have been caused by a new accident and liability was imposed on Merchants, the insurance carrier for Mr. Pizza at the time of claimant's 1978 injury.

Merchants appealed this ruling to the Superior Court, contending that the evidence did not support a finding that the third incident was a mere recurrence, but instead indicated that a new injury, occasioned by unusual exertion, had taken place.

While the appeal was pending in Superior Court, Merchants entered into a compensation agreement with claimant. This agreement specifically recognized that the dispute continued as to which carrier was to pay the compensation therein agreed to.[1]

Confident that the appeal to Superior Court involved only a determination of which of the two insurance carriers would pay the agreed compensation, counsel for claimant notified the Prothonotary that he was withdrawing from the case and would not be involved in the appeal.

The Superior Court ultimately issued two opinions in this case.[2] In both decisions the Judge of Superior Court determined that the Board's finding that claimant's final injury was a recurrence was erroneous because it was not sufficiently supported by the evidence. After reviewing claimant's testimony as to how the injury occurred and the undisputed medical testimony which indicated that the second disc rupture "requires a second force for the herniation" which was prompted by claimant's lifting, the court concluded that such evidence was inconsistent with a finding of a recurrence, as that term is defined in *DiSabatino & Sons, Inc. v. Facciolo*, Del.Supr., 306 A.2d 716, 717, 719 (1973). For these reasons the court reversed the Board's finding as to recurrence.

The court then proceeded to discuss, in each of its decisions, whether the claim-

1. The agreement included the following:
 Merchants Insurance Group and claimant agree that these benefits are being paid in spite of the fact that Merchants has appealed the Board's decision wherein it was determined that Merchants and not Home Insurance Company is responsible for the aforesaid payments. Should it subsequently be determined that Home is liable and not Merchants, the claimant will assist Merchants in any way necessary to secure the reimbursement of

funds from Home notwithstanding the provisions of this agreement.

2. We discuss the Superior Court's first opinion, which was withdrawn, only because it has a direct bearing on the argument raised in this Court, that claimant's attorney should not have been permitted to enter the appeal proceedings in Superior Court for the first time, at the reargument stage of the proceedings.

ant's last injury was caused by unusual exertion. Such a finding has been pictured as a prerequisite to compensability where the claimant was already suffering from a pre-existing physical condition or weakness. *See General Motors Corp. v. Veasey,* Del.Supr., 371 A.2d 1074 (1977); *Milowicki v. Post and Paddock, Inc.,* Del.Supr., 260 A.2d 430 (1969).

In its first decision, the court ruled that the Board's finding that claimant had not expended unusual exertion in sustaining his injury was supported by sufficient evidence, and the court sustained the Board's conclusion on that point. Because the court had determined that claimant's 1980 incident was not a recurrence and was not initiated by unusual exertion, the Superior Court concluded that claimant's latest injury was not a compensable accident. This result would have allowed both insurance carriers to avoid liability.

Claimant, who had not participated in the appeal, then filed a motion for reargument, asserting that because the parties had already stipulated that compensation was due him, the judge had decided an issue which was not properly before the Superior Court on appeal.

After consideration of the respective positions of all the litigants, Superior Court withdrew its first decision and issued its second decision. In the second decision Superior Court re-evaluated its application of the unusual exertion rule and concluded that the claimant had expended unusual exertion when he slipped and twisted his back in his attempt to lift the carton of milk. 476 A.2d 1101. The court then went on to hold that the Board's failure to find unusual exertion under such circumstances constituted legal error, and, therefore, the court reversed the Board's ruling. This finding of unusual exertion was tantamount to ruling that the last incident amounted to a new compensable accident. The court, relying on *DiSabatino & Sons, Inc. v. Facciolo,* Del.Supr., 306 A.2d at 719, then ruled that since liability falls upon the insurer whose policy is in effect on the date of the new accident, Home, the carrier for Mr. Pizza at that time, was liable.

Home then appealed to this Court. Home sets forth three arguments in support of its contention that the Superior Court decision constituted reversible error. These arguments are as follows: (1) there was substantial evidence to support the Board's finding that the June 11, 1980 accident did not involve unusual exertion; (2) the compensation agreement entered into between Merchants and claimant rendered the appeal moot; and (3) Superior Court erred when it permitted claimant to file for reargument when he had taken no part in the appeal and, therefore, had not briefed the issues before the Superior Court. The second and third arguments are found to be without merit under the factual circumstances of this case. Only the first argument requires extensive discussion.

■ We note at the outset that the parties agreed and stipulated that the injury of June 11, 1980 (along with claimant's two prior injuries) was a compensable industrial accident. Consequently, the primary issue which must be addressed on appeal, is which insurance company is to compensate claimant. Our resolution of that issue follows our conclusion as to the cause of claimant's injury. Specifically, it must be determined whether there is substantial evidence in the record to support the Board's view that claimant's injury of June 11, 1980 was primarily caused by his prior back condition; or, does the record give credible support only to the view that his current condition resulted primarily from the chain of events which took place in 1980 when claimant slipped as he attempted to lift the milk carton. Delaware case law has established that if the claimant's final injury is a recurrence, the original insurer is liable; on the other hand, if the injury is caused by a new work-connected accident, any liability will be placed on the insurer at risk at the time that accident took place. *DiSabatino & Sons, Inc. v. Facciolo,* 306 A.2d at 719. The difficulty is that back conditions are often caused in part by a prior condition or

injury, and in part by a new incident and consequently a primary cause is difficult to find.

■ When Superior Court came to the initial conclusion that the claimant's June 11, 1980 incident was not a compensable accident, the court decided an issue which had been removed from the case by prior stipulation. For that reason justice required that the claimant's motion for reargument be granted, even though claimant had not participated in the appeal up to that juncture. Claimant's motion merely addressed the issue which was then before the court, and, as we have indicated, we rule that the Superior Court did not abuse its discretion in allowing the claimant's position to be heard.[3]

This Court has previously described the term recurrence as "... the return of a physical impairment, regardless of whether its return is or is not the result of a new accident. As applied in most workmen's compensation cases, however, it is limited to the return of an impairment without the intervention of a new or independent accident." *DiSabatino & Sons, Inc. v. Facciolo*, 306 A.2d at 719.

■ The pertinent inquiry which logically follows, requires an examination as to exactly how the latter injury was sustained. If the medical condition was caused by unusual exertion, such a finding is relevant to this analytical approach. Where it is concluded, on an adequate record, that a claimant was injured while expending unusual exertion, such a conclusion, in itself, amounts to a finding of an "intervention of a new or independent accident." In such circumstances, a court

would be precluded from reaching a finding of a mere recurrence.

■ An examination of the evidence presented as to the incident of June 11, 1980 clearly reveals that the claimant did engage in unusual exertion when he slipped in his attempt to lift the milk carton. This was the cause of the injury.

■ The application of the unusual exertion rule entails a consideration of the unusualness of the exertion expended and not the nature of the activities which were performed. *Boulevard Elec. Sales v. Webb*, Del.Supr., 428 A.2d 11, 13–14 footnote *. Therefore, the fact that claimant had previously lifted such a milk carton in the performance of his routine tasks, without slipping, is not determinative.

■ To be considered "unusual", the exertion must be more than that which is ordinarily required in the performance of the employee's duties. *General Motors Corporation v. Veasey*, Del.Supr., 371 A.2d 1074, 1076 (1977).

Citing the facts as developed by the Board, the Superior Court noted that:

... claimant's injury was due to exertion which was more than that ordinarily required to lift and carry the milk carton. The initiating event was claimant's slip. As a result of this slip, he lost his balance, lost his grip on the carton with his left hand and severely twisted and wrenched his back. Such a stressful expenditure of energy is not the usual exertion required in lifting and carrying a milk carton. In fact, such an energetic activity is beyond the exertion normally required by claimant in performing his usual duties.

---

3. On the other hand Home presented its contention that the compensation agreement entered into between Merchants and claimant rendered the appeal moot, for the first time, in its response to claimant's motion for reargument. As such, this contention was not properly before the trial court, and the trial court correctly chose to ignore it. We do likewise. *See* Supreme Court Rule 8. Furthermore, the agreement specifically noted that Merchants was ap-

pealing the decision of the Board and required claimant to "assist Merchants in any way necessary to secure the reimbursement of funds from Home notwithstanding the provisions of this agreement." As such, the agreement did not constitute a final agreement by the parties, and instead contemplated the possibility of a different outcome when the merits were finally adjudicated.

We agree with the Superior Court's holding, to the effect that the record supports only a finding of unusual exertion in this case. The contrary finding by the Board was not supported by substantial evidence.

 The finding that the accident causing the injury occurred while claimant was engaged in unusual exertion compels us to rule that it was the last accident which was the substantial cause of claimant's current medical condition. Hence, Superior Court was correct when it ruled that the second carrier, Home, is liable to claimant for benefits. We note that we need not, and do not, address the issue of whether a finding of mere usual exertion, as the cause of the third incident, would merit a similar result under these circumstances.

The Superior Court is affirmed.

MOORE, Justice, concurring.

I fully concur in the result, but refrain from endorsing the principle upon which it is based. Necessarily, the carefully drafted majority opinion turns on the issue of unusual exertion. This Court has repeatedly adhered to the rule announced in *General Motors Corp. v. Veasey*, Del.Supr., 371 A.2d 1074 (1977), that in cases of this type an "accident" is compensable only if the employee was engaged in some form of unusual exertion.

Because of the inequities that requirement imposes on many injured workers, I respectfully suggest that the time has come for its total abandonment, and I would affirm without reference to it. While I joined this Court's decision in *Talmo v. New Castle County*, Del.Supr., 454 A.2d 758 (1982), we did not reach the question because of the facts there. *See* 454 A.2d at 761. Later, in *Mooney v. Benson Management Co.*, Del.Supr., 466 A.2d 1209, 1212 (1983), we seriously eroded the rule in heart attack cases.

In my view the unusual exertion rule, being entirely the product of judicial decisions, and not the result of legislative action, should be abandoned. Its continued viability places Delaware in the backwaters

of jurisprudence. *See* 1B Larson's Workmen's Compensation Law § 38.00.

While I accept the principle that stare decisis is a vital stabilizing force in the law, I also adhere to my previously expressed view that "[t]he law should be an ever developing body of doctrines, precepts, and rules designed to meet the evolving needs of society ... While stare decisis has its place, the strength of the Common Law is its ability to grow and respond to the realities of life. Absent this, the law fails in its vital purpose". *Monroe Park v. Metropolitan Life Insurance Co.*, Del.Supr., 457 A.2d 734, 738 (1983).

I believe that irrespective of previous condition, an injury should be compensable if the ordinary stress and strain of employment is a substantial cause of the injury. This is the usual exertion rule. While not problem free, it is a fairer standard of recovery for those injured in the course of their employment.