SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

June 28, 2016

Kyle F. Dunkle, Esquire
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, DE 19903

Christine P. O'Connor, Esquire
Benjamin K. Durstein, Esquire
Tybout, Redfearn & Pell
750 N. Shipyard Drive, Suite 400
Wilmington, DE 19801

Christopher T. Logullo, Esquire
Chrissinger & Baumberger
Three Mill Road, Suite 301
Wilmington, DE 19806

> RE: *Nanticoke Health Services, Inc. v. Latassha Washington*
> **C.A. No. S15A-07-004 ESB**

Dear Counsel:

This is my decision on Nanticoke Health Services, Inc.'s appeal of the Industrial Accident Board's finding that the medical treatment provided by Dr. Manonmani Antony to Latassha Washington for her lumbar radiculopathy was reasonable, necessary, and causally related to an accident that Washington had at work on March 29, 2010, and that Nanticoke's workers' compensation carrier at the time, Liberty Mutual, was responsible for the payment of Dr. Antony's medical bills. Washington, a certified nursing assistant for Nanticoke, had three accidents that are to some extent relevant in this case. Washington had compensable lifting accidents

at work while caring for patients on March 29, 2010, and April 27, 2011, and a non-work related motor vehicle accident on August 27, 2012. Liberty Mutual assumed responsibility for the March 29, 2010 work accident where Washington injured one of the discs in her back and paid for Washington's lost wages and medical bills for years until it abruptly stopped paying in 2014. SISCO assumed responsibility for the April 27, 2011 work accident where Washington strained the muscles in her lower back and paid for Washington's lost wages and medical bills, which were negligible.

The overriding issue in this case is which carrier is responsible for payment of Dr. Antony's medical bills. The parties agree that Washington's car accident is not relevant to the resolution of this issue. The parties also agree that Dr. Antony's treatment of Washington's lumbar radiculopathy was reasonable and necessary. Dr. Antony concluded that Washington's lumbar radiculopathy was caused by her March 29, 2010 work accident. The three medical doctors that testified before the Board agree that the lumbar strains caused by Washington's April 27, 2011 work accident and August 27, 2012 auto accident resolved quickly. Therefore, I have concluded, largely as the Board did, that the April 27, 2011 work accident is not relevant because none of Dr. Antony's treatment is related to it, leaving Liberty Mutual responsible for Dr. Antony's medical bills. Quite simply, Liberty Mutual was and remains the carrier responsible for the March 29, 2010 work accident, which was the accident that caused

2

Washington's lumbar radiculopathy, which is the condition that Dr. Antony was treating.

Liberty Mutual and SISCO also argue that the Board should have rejected Dr. Antony's testimony because before she testified she was not aware of all of Washington's medical history. I have also concluded that it was appropriate for the Board to rely on Dr. Antony's testimony because she was aware of all of Washington's medical history by the time she did testify. Therefore, I have affirmed the Board's decision.

## Background

### The March 29, 2010 Work Accident

Latassha Washington was working as a certified nurse's assistant for Nanticoke Health Services when she injured her back at work while trying to move an obese, total-care patient on March 29, 2010. An MRI performed that day showed that Washington had a left foramina and extraforaminal disc protrusion at L5-S1, with posterior osteophyte spurring resulting in left-sided neuroforaminal stenosis and encroachment of the existing left nerve root. Put another way, Washington had a protruding disc in her lumbar spine that was pinching a nerve on her left side. This condition is known as lumbar radiculopathy. Washington was out of work from March 29 through April 26, 2010. Nanticoke's then workers' compensation carrier,

3

Liberty Mutual, entered into an Agreement as to Compensation with Washington and paid her total disability benefits for her lumbar radiculopathy. Washington treated with Dr. Benjamin Tacheron of Delmarva Pain Associates from April 14, 2010 to March 24, 2011. Dr. Tacheron gave Washington at least seven lumbar epidural steroid injections and one nerve root block for her back pain during that time. Liberty Mutual paid for all of the medical treatment provided by Dr. Tacheron.

<u>The April 27, 2011 Work Accident</u>

Washington's back pain flared up at work when she tried to prevent a patient from falling on April 27, 2011. Washington was diagnosed with a lumbar strain. Washington was out of work from April 28, 2011 through May 2, 2011. Nanticoke's then workers' compensation carrier, SISCO, entered into an Agreement as to Compensation with Washington and paid her total disability benefits for her lumbar strain and the related medical treatment, which was just a prescription for pain medication. Washington resumed treatment with Dr. Tacheron and then Dr. Conworth Dayton-Jones from September 30, 2011 to April 6, 2012. During that time, Washington received a lumbar epidural steroid injection, a bilateral median branch block, and a bilateral SI joint injection. Liberty Mutual paid for the medical treatment provided by Dr. Tacheron and Dr. Dayton-Jones.

4

## The August 27, 2012 Automobile Accident

Washington's back pain flared up yet again when she was rear-ended by a co-worker while going to work on August 27, 2012. Washington again went to the Nanticoke Emergency Room and was discharged the same day with pain medication.

Washington resumed treatment with Dr. Dayton-Jones, but soon got into a dispute with Liberty Mutual over payment of her medical expenses incurred after her motor vehicle accident on August 27, 2012. Up until the car accident, Liberty Mutual had been paying for Washington's medical treatment, except for Washington's visit to the emergency room on April 27, 2011, which was paid by SISCO. Washington then filed a Petition to Determine Compensation Due with the Industrial Accident Board. Washington withdrew the Petition after Liberty Mutual agreed to continue paying for her treatment with Dr. Dayton-Jones.

## Subsequent Treatment

Washington treated with Dr. Dayton-Jones from June 24, 2013 through February 27, 2014. Washington received several sets of injections in her back. Washington was scheduled for another injection, but then got into another coverage dispute with Liberty Mutual. Liberty Mutual, despite paying for the medical treatment for Washington's disc problems for three years, refused to pay for any more medical treatment.

Washington then started treating with Dr. Antony at the Sussex Pain Relief Center in July 2014. During the week of December 8, 2014, Washington received pain medication and a number of lumbar spine injections. Dr. Antony got an updated MRI of Washington's back, which showed similar findings to an MRI done in 2010.

### The Industrial Accident Board Proceedings

Washington filed two Petitions to Determine Additional Compensation Due with the Industrial Accident Board on October 15, 2014. Washington filed a Petition against Liberty Mutual for her March 29, 2010 work accident. Washington filed a Petition against SISCO for her April 27, 2011 work accident. Washington sought compensation for medical expenses incurred in connection with her treatment with Dr. Antony. The Board combined both petitions and heard them together.

Washington and three medical doctors testified at the hearing. Dr. Antony, a board-certified anesthesiologist and pain management specialist, testified for Washington. Dr. David Sopa, an orthopedic surgeon, testified for Liberty Mutual. Dr. Lawrence Piccioni, an orthopedic surgeon, testified for SISCO.

Washington testified about the nature of her job as a certified nursing assistant for 20 years, her two workplace accidents, her one motor vehicle accident, and her medical treatment. Dr. Antony told the Board that Washington's lumbar radiculopathy was not a degenerative condition and that it left her susceptible to low

6

back pain and that all of the treatment she provided to Washington was related to Washington's March 29, 2010 work accident.

Dr. Sopa and Dr. Piccioni told the Board that Washington's lumbar radiculopathy was degenerative in nature and pre-existed and was not related to her March 29, 2010 work accident. Dr. Sopa did not address Washington's April 27, 2011 work accident because he was not aware of it. Dr. Sopa told the Board that Washington's August 27, 2012 auto accident aggravated her low back problems, but that they resolved quickly. Dr. Piccioni did address Washington's April 27, 2011 work accident, telling the Board that Washington suffered a strain/sprain injury of the lumbar spine that temporarily exacerbated her symptoms, but that those symptoms quickly abated and needed no further treatment. Dr. Piccioni did not think that Washington's lumbar radiculopathy was causally related to any of the three accidents, but he did agree that Dr. Antony's treatment of Washington's lumbar radiculopathy was reasonable and necessary.

The Board accepted Dr. Antony's testimony and concluded that Washington's medical expenses were reasonable and necessary and causally related to Washington's March 29, 2010 work accident. The Board reached this conclusion because (1) Washington's March 29, 2010 work accident required her to miss work and undergo physical therapy and pain management, all things that she had not

undergone before, which suggested to the Board that Washington's March 29, 2010 work accident was the event that caused her back problems; (2) Dr. Antony and Dr. Piccioni, the only two doctors that addressed Washington's April 27, 2011 work accident, concluded that it was nothing more than an exacerbation of Washington's back pain that resolved quickly; (3) Dr. Sopa believed that Washington's August 27, 2012 auto accident aggravated her low back problems, but that they resolved quickly, and (4) the two MRI's, the first of which was taken after Washington's March 29, 2010 work accident and the second of which was taken after all three accidents, were basically the same, suggesting to the Board that Washington's April 27, 2011 work accident and her August 27, 2012 motor vehicle accident did not affect Washington's lumbar radiculopathy.

The Board concluded that Liberty Mutual, the carrier responsible for Washington's March 29, 2010 work accident, was responsible for the treatment provided by Dr. Antony to Washington, reasoning that Washington's April 27, 2011 work accident was no more than a recurrence of Washington's March 29, 2010 work accident that resolved quickly and did not change Washington's physical condition and did not require any change in her medical care that she had been receiving for her March 29, 2010 work accident, leaving Liberty Mutual responsible for Washington's

8

most recent medical expenses.[1] The Board also concluded that Liberty Mutual was responsible for Washington's April 27, 2011 work accident and ordered that Liberty Mutual pay for Dr. Antony's treatment from July 21, 2014 to February 25, 2015. Those expenses were incurred long after the injuries caused by Washington's April 27, 2011 work accident had resolved and were, as the Board noted, causally related to Washington's March 29, 2010 work accident.

## Standard of Review

The Supreme Court and this Court repeatedly have emphasized the limited appellate review of the factual findings of an administrative agency. The function of the Superior Court on appeal from a decision of the Industrial Accident Board is to determine whether the agency's decision is supported by substantial evidence and whether the agency made any errors of law.[2] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[3] The appellate court does not weigh the evidence, determine questions

---

[1] *Whitney v. Bearing Construction, Inc.,* 93A.2d 655, 2014 WL 2526484 *2 (Del. 2014); *Standard Distributing Company v. Nally*, 630 A.2d 640, 641 (Del. 1993).

[2] *General Motors v. McNemar*, 202 A.2d 803, 805 (Del. 1964); *General Motors v. Freeman*, 164 A.2d 686 (Del. 1960).

[3] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994); *Battista v. Chrysler Corp.*, 517 A.2d 295, 297 (Del. Super. 1986), *app. dism.*, 515 A.2d 397 (Del. 1986)(TABLE).

9

of credibility, or make its own factual findings.[4]   It merely determines if the evidence is legally adequate to support the agency's factual findings.[5]   We review errors of law *de novo*.[6]   Absent an error of law, the Board's decision will not be disturbed where there is substantial evidence to support its conclusions.[7]

## Discussion

Liberty Mutual argues that the Board erred when it (1) relied on Dr. Antony's testimony, and (2) found that Liberty Mutual was responsible for Dr. Antony's medical treatment.

## Dr. Antony

Liberty Mutual argues that Dr. Antony's testimony should be stricken because Dr. Antony did not know about Washington's complete medical history until two weeks before Dr. Antony's deposition.   Specifically, Washington did not tell Dr. Antony about her long history of low back pain and her August 27, 2012 motor vehicle accident.   SISCO joins this argument.

Dr. Antony told the Board that the medical treatment she provided to

---

[4] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[5] 29 *Del.C.* § 10142(d).

[6] *Person-Gaines v. Pepco Holdings Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[7] *Dallachiesa v. General Motors Corp.*, 140 A.2d 137 (Del. Super. 1958).

Washington for her lumbar radiculopathy was causally related to Washington's March 29, 2010 work accident. Dr. Piccioni and Dr. Sopa told the Board that Washington's lumbar radiculopathy was degenerative in nature and not related to Washington's March 29, 2010 work accident. The Board accepted Dr. Antony's testimony on causation over the testimony of Dr. Sopa and Dr. Piccioni. Liberty Mutual argues that the Board should have disregarded Dr. Antony's testimony altogether because Dr. Antony did not learn about Washington's entire medical history until two weeks before Dr. Antony testified. Specifically, Washington did not tell Dr. Antony about her long history of low back pain and her August 27, 2012 motor vehicle accident, believing that they were not relevant. I find no merit to Liberty Mutual's argument. Dr. Antony did learn about Washington's entire medical history before Dr. Antony testified by reviewing all of Washington's medical records and talking to her. Thus, Liberty Mutual's argument just makes no sense because Dr. Antony knew all of Washington's medical history when she testified.

The Board was certainly well within its discretion to accept Dr. Antony's testimony over the other two doctors on this issue.[8] The record indicates that while Washington did have low back pain for quite some time before her March 29, 2010 work accident, that it was that accident that caused her to miss work and require

---

[8] *DiSabatino Brothers, Inc., v. Wortman,* 453 A.2d 102, 106 (Del. 1982).

11

medical treatment – pain injections – that she had never had before. Thus, there is a rationale supporting Dr. Antony's causation testimony. As to Washington's April 27, 2011 work accident, both Dr. Antony and Dr. Piccioni agreed that it resolved quickly and that Washington's lumbar radiculopathy was not related to it. Similarly, as to Washington's August 27, 2012 motor vehicle accident, all three doctors agreed that it resolved quickly and that Washington's lumbar radiculopathy was not related to it. Indeed, the MRI done after the March 29, 2010 work accident and the MRI done after all three accidents were virtually the same, supporting Dr. Antony's opinion that Washington's April 27, 2011 work accident and her August 27, 2012 motor vehicle accident had no affect on Washington's disc problems. The Board's decision to accept Dr. Antony's testimony is rational and supported by the evidence in the record.

Successive Carrier Liability

Liberty Mutual argues that SISCO should be responsible for Dr. Antony's medical treatment under the law governing successive carrier liability because Washington's April 27, 2011 accident was a separate new accident that occurred while SISCO was the carrier at risk and that SISCO signed a compensation agreement with Washington to cover her lost wages and medical treatment related to the April 27, 2011 accident.

Liberty Mutual's argument is not supported by the applicable law or medical

evidence in this case. The law of successive carrier liability arose initially because of the difficulty that medical doctors had in apportioning fault among carriers for occupational diseases that occurred over a period of time.[9] That law has evolved to include situations involving repeated injuries to the same body part where, once again, it is difficult for a medical doctor to apportion fault among carriers.[10] However, where the injuries are to two distinct body parts at different times, there is no need to rely upon the traditional case law governing successive carrier liability.[11] Instead, you need only to causally relate the medical treatment at issue to the appropriate work accident. The carrier responsible for that work accident would be responsible for the medical treatment. We know in this case that Washington's March 29, 2010 work accident caused her lumbar radiculopathy. We know that Dr. Antony treated Washington for her lumbar radiculopathy. Lastly, we know that Liberty Mutual assumed responsibility for that accident and the medical treatment related to it. Indeed, Liberty Mutual assumed responsibility for that accident years

---

[9] *Alloy Surfaces Co. v. Cicamore*, 221 A.2d 480 (1966).

[10] See *Standard Distributing Co., v. Nally*, 630 A.2d 640 (Del. 1993); *DiSabatino & Sons, Inc., v. Facciolo,* 306 A.2d 716 (Del. 1973); *Forbes Steel & Wire Co., v. Graham*, 518 A.2d 86 (Del. 1986).

[11] *DeJesus v. Wilmington Housing Authority*, IAB Hearing Nos. 1386136 & 1400508 (Jan. 29, 2014); *The Estate of Reginald Spence v. State of Delaware*, Hearing Nos. 1348583 and 139220 (Feb. 11, 2014).

ago and paid for the medical treatment for Washington's lumbar radiculopathy for years until it abruptly stopped paying without any reason. Therefore, I have concluded that Liberty Mutual has failed in its effort to shift responsibility to SISCO because Dr. Antony's treatment of Washington's lumbar radiculopathy is causally related to her March 29, 2010 work accident, and not Washington's April 27, 2011 work accident. Quite frankly, nothing has changed over the years since Liberty Mutual first assumed responsibility for Washington's lumbar radiculopathy because Washington's April 27, 2011 work accident injured a different part of her back than did her March 29, 2010 work accident.

Washington's two back problems are different in nature and causation, treatment and status. Washington sustained multiple injuries to her back. The back covers everything from below the neck to above the buttocks. That is a lot of territory and it is composed of many different and distinct parts. Washington had very distinct injuries to her back. Washington's March 29, 2010 work accident injured a disc in her back. Washington's April 27, 2011 work accident strained the muscles in her lower back. Washington's lumbar radiculopathy has not resolved and has required treatment for four plus years and still requires treatment. Washington's lumbar strain resolved quickly and does not require further treatment.

## Nature and Causation

Washington sustained lumbar radiculopathy as a result of her March 29, 2010 work accident. Lumbar radiculopathy is a nerve irritation caused by damage to the discs between the vertebrae.[12] Damage to the disc may occur as a result of degeneration of the outer ring of the disc, traumatic injury, or both.[13] As a result, the central softer portion of the disc can rupture (herniate) through the outer ring of the disc and abut the spinal cord or its nerves as they exit the bony spinal column.[14] This rupture is what causes the commonly recognized pain of "sciatica" that shoots down the leg.[15]

Washington sustained a lumbar strain as a result of her April 27, 2011 work accident. A lumbar strain is a stretching injury to the ligaments, tendons, and/or muscles of the low back.[16] The stretching incident results in microscopic tears of varying degrees in these tissues.[17] A lumbar strain is one of the most common causes

---

[12] hhtp://medicinenet.com/script/main/art.asp?articlekey=26093.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] http://www.medicinenet.com/script/main/art.asp?articlekey=26090.

[17] *Id.*

of low back pain.[18]

### Treatment

The treatment that Washington received for her two back injuries was very different. Washington received numerous injections of pain medication in her back from 2010 to 2014 to treat her lumbar radiculopathy. Washington received nothing more than rest and pain medication for a short period of time to treat her lumbar strain. Indeed, Dr. Antony's treatment of Washington's lumbar radiculopathy is consistent with the treatment that the two other doctors, Dr. Tacheron and Dr. Dayton-Jones, provided to Washington. It is not treatment for a low back strain that resolved years ago.

### Status

Washington still suffers from lumbar radiculopathy. All three doctors are in agreement on that issue. Washington's lumbar strain resolved itself years ago. All three doctors are in agreement on that issue as well.

### The Nature of Liberty Mutual's Argument

Liberty Mutual's argument is unusual given the history of this case and the medical evidence. Liberty Mutual is trying to shift responsibility to SISCO for the payment of medical treatment for an ongoing medical condition that is causally

---

[18] *Id.*

related to an accident that Liberty Mutual assumed responsibility for years ago because SISCO assumed responsibility for a later accident that caused an unrelated medical condition that resolved quickly and requires no further treatment. Liberty Mutual's argument simply does not make sense. Liberty Mutual recognized that Washington's March 29, 2010 work accident was compensable. Liberty Mutual entered into an Agreement as to Compensation with Washington and paid her total disability benefits for her lumbar radiculopathy. Liberty Mutual also paid for Washington's medical treatment for her lumbar radiculopathy for approximately 2.5 years. Liberty Mutual stopped paying for a brief period of time. When Washington challenged Liberty Mutual's refusal to continue payment, Liberty Mutual agreed to continue paying and did so for approximately 1.5 more years. Liberty Mutual then simply stopped paying again, forcing Washington to bring this matter before the Board.

Liberty Mutual initially tried to prevail by arguing to the Board that Washington's lumbar radiculopathy was not causally related to her March 29, 2010 work accident. Liberty Mutual used Dr. Sopa's testimony to support that argument. Dr. Sopa told the Board that Washington's lumbar radiculopathy was degenerative in nature and not caused by an accident. Liberty Mutual did not prevail on that argument because the Board accepted Dr. Antony's testimony on causation. I find

Liberty Mutual's argument to be particularly odd in this respect because it had already accepted responsibility for the March 29, 2010 work accident that caused Washington's lumbar radiculopathy and paid for her medical treatment for years. Nevertheless, Liberty Mutual tried, years later, to avoid responsibility for that accident, injury, and related medical treatment.

Liberty Mutual then tried to prevail by arguing to the Board that SISCO should be responsible for Dr. Antony's medical treatment because SISCO had assumed responsibility for Washington's April 27, 2011 work accident. Liberty Mutual did not prevail on this argument because Washington's two work accidents caused injuries to two different parts of her back. Washington's March 29, 2010 work accident injured a disc in her back. Washington's April 27, 2011 work accident strained the muscles in her lower back. Washington's August 27, 2012 auto accident also strained the muscles in her lower back. Lumbar radiculopathy and a lower back strain are two very different injuries. Nevertheless, Liberty Mutual tried to treat them like the same medical condition. That argument simply has no basis in the medical evidence in this case. All three doctors agreed that Washington still has a herniated disc. Dr. Sopa had no opinion about the consequences of Washington's April 27, 2011 work accident because he was not aware of it. However, Dr. Piccioni and Dr. Antony agreed that the lower back strain caused by Washington's April 27, 2011

18

work accident had resolved quickly. Moreover, all three doctors agreed that the lower back strain caused by Washington's August 27, 2012 automobile accident had also resolved quickly. Thus, the bottom line is that Washington still has a disc problem that was caused by her March 29, 2010 work accident and no back problems at all related to her April 27, 2011work accident. The problem with Liberty Mutual's second argument is that its medical expert, Dr. Sopa, could not causally relate Washington's disc problems and related treatment to her April 27, 2011 work accident. Nevertheless, Liberty Mutual still hopes to use that accident and long-resolved injury to transfer liability to SISCO for a problem that Liberty Mutual has for years recognized was its responsibility and for which it paid for years. Indeed, Liberty Mutual paid for Washington's medical treatment for her lumbar radiculopathy both before and after Washington's April 27, 2011work accident even though Liberty Mutual knew about it. I simply find no logic in Liberty Mutual's argument, particularly since it has no support in the medical evidence.

## Conclusion

While I have affirmed the Board's decision, I disagree with a part of its reasoning. The Board correctly ruled that Washington's lumbar radiculopathy was causally related to her March 29, 2010 work accident and that Liberty Mutual should remain responsible because Washington's April 27, 2011 accident was of no

19

consequence. In reaching this finding, the Board stated that Liberty Mutual had to pay for Dr. Antony's medical treatment because it was responsible for Washington's April 27, 2011 work accident under the "recurrence/aggravation" analysis. I conclude that was unnecessary and not correct because Washington's April 27, 2011 work accident caused a completely different injury to Washington's back that has resolved and Dr. Antony did not provide medical treatment for that injury. Dr. Antony provided medical treatment for Washington's lumbar radiculopathy, which was caused by her March 29, 2010 work accident. However, the Board was correct when it found that Liberty Mutual was responsible for Dr. Antony's treatment because it was reasonable, necessary and causally related to Washington's March 29, 2010 work accident. The Industrial Accident Board's decision is affirmed.

IT IS SO ORDERED.

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
oc:   Prothonotary
cc:   Industrial Accident Board

20